```
                    United States District Court
                      District of Massachusetts
 _____
                                )
CLEAN WATER ACTION,             )
                                )
         Plaintiff,             )
                                )
         v.                     )
                                )   Civil Action No.
SEARLES AUTO RECYCLING, CORP.,  )   16-12067-NMG
                                )
         Defendant.             )
 _____ )
```

### MEMORANDUM & ORDER

**Gorton, J.**

Plaintiff Clean Water Action, a nationwide, non-profit, public benefit corporation that works to protect the nation's water resources ("plaintiff"), claims that defendant Searles Auto Recycling Corp. ("Searles" or "defendant") has violated the Clean Water Act ("the CWA"), 33 U.S.C. § 1251 et seq., by failing to comply with the requirements of its Stormwater Permit. Searles' motion to dismiss is now pending before the Court. For the reasons that follow, that motion will be denied.

### I. Factual and Procedural Background

Searles operates an automobile salvage yard on Easthampton Road, in Northampton, MA ("the Facility"). When rainwater or snowmelt come into contact with the Facility, the subsequent stormwater runoff is contaminated with pollutants because the Facility conducts several of its industrial operations outside. The polluted stormwater flows from the Facility into catch

-1-

basins located on Easthampton Road, and eventually into Mill River through connected pathways of wetlands and waterways.

Clean Water Action alleges that its members have recreational, aesthetic and environmental interests in Mill River including using its water and the surrounding area for fishing, wildlife observation and other outdoor activities.

In May, 2016, Clean Water Action sent Searles a

> 60-day Notice of Violations and Intent to File Suit Regarding NonCompliance with Federal CWA's Industrial Stormwater Discharge Requirements ["the notice".]

After receiving the notice, Searles retained professionals, who investigated the Facility and prepared a Notice of Intent for Storm Water Discharges Associated with Industrial Activity ("NOI"). In July, 2016, the United States Environmental Protection Agency ("the EPA") issued Searles a Multi-Sector General Permit ID: MAR 053878 ("Stormwater Permit" or "Permit") pursuant to the CWA's National Pollutant Discharge Elimination System ("NPDES"). Among other things, the Permit requires in §§ 2.1 and 2.5 that Searles "minimize effluent discharges" by implementing adequate "control measures".

In August, 2016, Searles notified Clean Water Action that the EPA had issued it a Stormwater Permit to demonstrate its compliance with the CWA. In October, 2016, Clean Water Action filed a complaint alleging that Searles' was in violation of the CWA. Shortly thereafter, Searles filed a motion to dismiss for

lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) which plaintiff opposes.

**II. Legal Analysis**

    **A. Legal Standard**

Federal subject matter jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). To survive a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the party invoking federal jurisdiction bears the burden of proving its existence. Id.

When evaluating such a motion, a court must accept all well-pled factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 106-07 (1st Cir. 2012). In its analysis, a court may consider materials outside the pleadings and engage in preliminary fact-finding to make its ultimate legal conclusion. Skwira v. United States, 344 F.3d 64, 71-2 (1st Cir. 2003). Furthermore, under the First Circuit Court of Appeals' well-pled complaint rule, a court must disregard statements that "merely offer legal conclusion[s] . . . or [t]hreadbare recitals of the elements of a cause of action". Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Dismissal should be allowed only if, taking all

plaintiff's allegations as true, subject matter jurisdiction cannot be justified. Id.

**B. Analysis**

Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the grounds that plaintiff failed 1) to meet the statutory requirements necessary to bring suit under the CWA's Citizen Suit Provision and 2) to establish Article III standing.

### 1. Motion to Dismiss Under the Citizen Suit Provision of the Clean Water Act

The CWA includes a private cause of action against a person "who is alleged to be in violation of an . . . effluent standard or limitation". 33 U.S.C. § 1365(a)(1). A citizen may not, however, bring suit for "wholly past violations", and to establish jurisdiction the "citizen-plaintiff must make good-faith allegation[s] of a continuous or intermittent violation". Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 67(1987).

Pursuant to the CWA the EPA issues general permits, including Industrial Stormwater Permits, such as the one issued to Searles. 33 U.S.C. §§ 1311, 1342. Once a facility is granted a permit, "any permit noncompliance constitutes a violation of the CWA and is grounds for enforcement action." 40 C.F.R. 122.41(a). To remain in compliance with its Permit, and

thus with the CWA, Searles is required to monitor its control measures and, if it appears that those measures are ineffective, it must take corrective action. Specifically, whenever a visual assessment "shows evidence of stormwater pollution" corrective action is required. Id.

Defendant maintains this Court lacks subject matter jurisdiction because plaintiff has failed to make a "good-faith allegation" that defendant is continuously or intermittently violating the CWA. Gwaltney of Smithfield, Ltd., 484 U.S. at 67. It asserts that, at the time plaintiff filed suit, defendant had acquired its Permit and was therefore in compliance with the CWA.

Relying on Gwaltney of Smithfield, Ltd., 484 U.S. at 55, plaintiff counters that possession of a Stormwater Permit is not dispositive of compliance with the CWA. According to plaintiff, defendant has violated the CWA by failing to comply with its Permit, both at the time of the complaint's filing and thereafter. Specifically, plaintiff alleges that defendant has not implemented adequate control measures as is required by its Stormwater Permit. In support of that assertion, plaintiff submits a declaration by a Clean Water Action member, Sarah Moffett, who describes specific instances in which she witnessed visual indications of inadequate control measures, including

excessive particulate matter leaving the facility and entering catch basins on Easthampton road.

Plaintiff's factual allegations are neither "threadbare recitals of the elements of a cause of action" nor conclusory legal statements. Instead plaintiff provides specific factual allegations which, if true, demonstrate plausible inadequate control measures. Plaintiff has therefore alleged that defendant is continuing to violate its Permit and consequently the CWA. See Berberian v. Town of Andover, No. 12-10247-RBC, 2012 WL 1866293, at *3 (D. Mass. May 21, 2012). Thus, this Court has federal question subject matter jurisdiction. Id.

### 2. Article III Standing

Defendant further contends plaintiff's complaint should be dismissed because plaintiff lacks Article III standing, citing U.S. Const. art. III, § 2, cl. 1. At the pleading stage, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate [its] standing to bring the action". Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

To establish Article III Standing under the CWA, an organization must show that one of its members satisfies the following three requirements: 1) has sustained an injury in fact which is 2) caused by the violation and 3) redressable. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); see also Town

of Norwood v. F.E.R.C., 202 F.3d 392, 405-406 (1st Cir. 2000) (holding an environmental organization must identify at least one member who has standing in order for the organization to file suit). Finally, an organization aiming to establish standing must prove that the interest at issue is germane to the organization's purpose and that the claim or requested relief is not dependent on the participation of each member of the organization. Hunt v. Washington State Apple Adver. Comm'n 432 U.S. 333, 343 (1977).

Applying those requirements to this case, first plaintiff asserts that its complaint alleges that Clean Water Action members "live, recreate, and work in and around . . . Mill River" and submits declarations provided by two of its members, Margaret Byrne and Joe Smith, who describe their individual use and enjoyment of Mill River, near the Facility. Byrne's declaration indicates she is a regular hiker and is distressed with how polluted water will impact the wildlife and natural resources present in Mill River. Smith describes that he does not eat fish he catches in Mill River because of his concerns regarding the water quality due to the alleged pollution by Searles.

It is well established that aesthetic and recreational interests constitute injury in fact in relation to Article III standing. Conservation Law Found., Inc. v. Am. Recycled

Materials, Inc., No. CV 16-12451-RGS, 2017 WL 2622737, at *3 (D. Mass. June 16, 2017) citing Sierra Club v. Morton, 405 U.S. 727, 735 (1972). Assuming they are true, plaintiff's factual allegations and the submitted declarations support the reasonable inference that defendant's alleged noncompliance constitutes an injury in fact for the purposes of standing.

With respect to the second factor, relying on Friends of the Earth v. Gaston Copper Recycling, 2014 F.3d 149, 15457, defendant contends plaintiff's allegations are too speculative to show causation. Plaintiff replies that it has established causation by alleging that defendant is failing to implement adequate control measures in violation of its Permit and that it has members who use and enjoy the water in Mill River.

To meet the causation requirement for Article III standing at the pleading stage, the nonmoving party must demonstrate that the injury in fact is "fairly traceable" to the defendant by "show[ing] that a defendant discharges a pollutant that causes or contributes to the kind of injuries alleged". Maine People's All. v. Holtrachem Mfg. Co., LLC., 211 F. Supp. 2d 237, 253 (D. Me. 2002) citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183, 120 S. Ct. 693, 705, 145 L. Ed. 2d 610 (2000). Under the CWA a plaintiff does not need to show with "scientific certainty" that defendant's actions caused the alleged injury. Conservation Law Found., Inc., 2017

WL 2622737, at *3 (citing Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 257 (3d Cir. 2005)).

Plaintiff has submitted facts that support the reasonable inference that defendant is not in compliance with its Permit and that consequently Clean Water Action members are suffering harm, including inter alia the multiple declarations given by its members describing visual particulate matter leaving the Facility and the impact such discharge has on their use and enjoyment of Mill River. Collectively, such facts support the reasonable inference that plaintiff's alleged injury is "fairly traceable" to defendant's actions. Id.

Third, to establish redressability, plaintiff must show that the alleged injury "is likely to be redressed by a favorable decision". Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (internal citations and quotation marks omitted). The express purpose of the CWA is to restore

> the chemical, physical, and biological integrity of the nation's waters [and thus w]here a plaintiff complains of harm to water quality because a defendant exceeded its permit limits, an injunction will redress that injury at least in part.

Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 73 (3d Cir. 1990).

In the present case, plaintiff alleges that injunctive relief will redress its injuries by causing defendant to control

its discharges adequately and that a civil penalty will deter defendant and other industrial facilities from violating the CWA in the future. Assuming plaintiff's factual assertions are true, this Court can reasonably infer that defendant is acting in violation of the CWA by failing to comply with its Permit. Thus, plaintiff is correct in asserting that injunctive relief and a civil penalty would serve as adequate redress. Id. In sum, plaintiff has plausibly alleged that it has at least one member who meets the three elements of Article III Standing.

Finally, with respect to organizational standing, plaintiff has alleged facts showing that Clean Water Action is germane to the present case and that neither the claim nor the relief requested require the participation of individual Clean Water Action members in the lawsuit. See Hunt, 432 U.S. at 343. Plaintiff contends that the mission of Clean Water Action is to protect water resources and the present action seeks to enforce an alleged violation of the CWA. Furthermore, Plaintiff asserts that thousands of its members live in Northampton, indicating that the organization is acting appropriately as a proxy for its members. Accordingly, the motion to dismiss based upon lack of standing will be denied.

## ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 5) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated August 7, 2017