United States District Court
District of Massachusetts

| | |
|---|---|
| Clean Water Action, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Searles Auto Recycling, Corp., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 16-12067-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Clean Water Action, a nationwide, non-profit, public benefit corporation that works to protect the nation's water resources ("CWA" or "plaintiff"), claims that defendant Searles Auto Recycling Corp. ("Searles" or "defendant") has violated the Clean Water Act, 33 U.S.C. § 1251 et seq., by failing to comply with the requirements of its Stormwater Permit. In its counterclaim, defendant asserts that plaintiff's filing of this suit is an abuse of process intended for ulterior motives extraneous to the proceeding. Plaintiff's motion to dismiss the counterclaim is now pending before the Court. For the reasons that follow, plaintiff's motion to dismiss will be allowed.

## I. Background

Searles operates an automobile salvage yard on Easthampton Road in Northampton, Massachusetts ("the Facility"). When rainwater or snowmelt accumulate on the Facility, the subsequent stormwater runoff is contaminated with pollutants because the Facility conducts several of its industrial operations outside. The polluted stormwater flows from the Facility into catch basins located on Easthampton Road, and eventually into Mill River through connected pathways of wetlands and waterways.

In May, 2016, CWA sent Searles a "60-day Notice of Violations and Intent to File Suit Regarding NonCompliance with Federal Clean Water Act Industrial Stormwater Discharge Requirements" ("the notice"). After receiving the notice, Searles retained professionals, who investigated the Facility and prepared a Notice of Intent for Storm Water Discharges Associated with Industrial Activity. In July, 2016, the United States Environmental Protection Agency issued Searles a Multi-Sector General Permit ID: MAR 053878 ("Stormwater Permit" or "Permit") pursuant to the Clean Water Act's National Pollutant Discharge Elimination System. Among other things, the Permit requires in §§ 2.1 and 2.5 that Searles "minimize effluent discharges" by implementing adequate "control measures".

In August, 2016, Searles notified CWA that the EPA had issued to it a Stormwater Permit to demonstrate its compliance with the Clean Water Act. In October, 2016, CWA filed a complaint alleging that Searles was in violation of that very Act. Shortly thereafter, Searles filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) contending that Searles was in compliance of the Clean Water Act when CWA filed suit and still is. The motion was denied by this Court on August 7, 2017.

Searles filed its answer and counterclaim on August 28, 2017. Shortly thereafter, plaintiff filed a motion to dismiss defendant's counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). That motion is the subject of this memorandum.

## II. **Legal Analysis**

### A. **Legal Standard**

To survive a motion to dismiss, a complaint (or counterclaim) must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.

Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint (or counterclaim) as true and draw all reasonable inferences in the non-movant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**B. Analysis**

CWA moves to dismiss Searles' counterclaim pursuant to Rule 12(b)(6) on the grounds that (1) the Court has already rejected Searles' contention that CWA knowingly pursued a groundless claim and (2) Searles failed to allege sufficient factual matter to state the ulterior motive element in its claim for abuse of process.

**1. Court's Ruling on CWA's Allegations**

CWA first contends that the Court previously concluded that CWA's allegations were made in good faith, plausible and supported by sufficient factual matter when it denied Searles' motion to dismiss for lack of subject matter jurisdiction. CWA suggests, therefore, that the Court cannot find abuse of process on its part.

CWA's argument does not, however, consider the proper standard of review for a motion to dismiss. When a claim is challenged under Rule 12(b)(6), the Court views the pleadings in the light most favorable to the non-moving party. See Fitzgerald v. Barnstable Sch. Comm., 55 U.S. 246 (2009). When the Court ruled on Searles' motion to dismiss, the pleadings were viewed in the light most favorable to CWA. In considering CWA's motion to dismiss the counterclaim, this Court will view the pleadings in the light most favorable to Searles.

### 2. **Ulterior Purpose**

CWA also contends that Searles has not pled sufficient factual matter to support its claim for abuse of process. Specifically, CWA claims that Searles has not alleged an "ulterior purpose" to CWA's filing suit, an element necessary to succeed on a claim for abuse of process. Searles responds that its counterclaim is well-pled and maintains that CWA instituted a baseless suit with the intent to "use it as a club" to coerce Searles to pay (or settle to pay) monies to CWA.

In its counterclaim, Searles asserts that

> despite having received notice of Searles' compliance with the Clean Water Act, CWA initiated the instant action for the ulterior purpose of obtaining fees and penalties from Searles.

Abuse of process is a form of coercion to obtain a collateral advantage that is not properly involved in the

proceeding itself. Vittands v. Sudduth, 49 Mass. App. Ct. 401, 406 (2000). The surrender of property or payment of money are common examples of collateral advantage. Id. In order to succeed on a claim for abuse of process, a moving party must prove that (1) a process was used (2) for an ulterior or illegitimate purpose (3) resulting in damage. Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011).

Searles's contention that CWA initiated this lawsuit to obtain fees is unavailing because any imposed civil penalties will not be payable to CWA and any attorneys' fees awarded would not be "ulterior" but rather directly involved in the proceeding itself. If a citizen prevails in a suit brought under the CWA, the district court may award attorney's fees and injunctive relief, and impose civil penalties on the defendant, payable to the United States Treasury. Paolino v. JF Realty, LLC, 710 F.3d 31, 35(1st Cir. 2013) (citing §§ 1365(a) & (d)).

Even if CWA has instituted this action in order to obtain attorneys' fees, such fees would be incidental to the successful action under the Clean Water Act. Vahlsing v. Commercial Union Ins. Co., 928 F.2d 486, 490 (1st Cir. 1991)("when process is employed for the purpose for which the law intends its use, no abuse of process occurs even though the person using the process may have an improper motive in addition to his lawful intention"). The Clean Water Act was designed not only to allow

a citizen to commence an action on his own behalf against any person who is alleged to be in violation of an effluent standard or limitation under the Clean Water Act but also to encourage citizens to do so. See 33 U.S.C. § 1365(a); Nat. Res. Def. Council v. EPA, 484 F.2d 1331, 1337 (1st Cir. 1973)(noting that Congress added an attorney's fees provision to "encourage citizens to bring meritorious actions"). The purpose of fee awards under the Clean Water Act is the promotion of citizen enforcement. Id. at 1338 (reiterating that petitioners, in a watchdog role, have performed a service and are entitled to attorneys' fees).

Searles alleges that CWA's only purpose in bringing suit is to obtain fees and penalties which will become due based solely on the merits of the instant proceeding. In actions for abuse of process that have survived motions to dismiss, plaintiffs have alleged sufficient facts to show that process was used to gain a collateral advantage outside of the proceeding. See, e.g., Vittands, 49 Mass App. Ct. at 406 (holding that defendant stated a claim for abuse of process against plaintiff who brought suit to prevent defendant from legally building on her own land); see also Millenium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627 (2010)(determining that attorney stated a counterclaim for abuse of process against defendant who brought

suit in order to disqualify the attorney from representing his wife in a divorce proceeding).

In this case, fees and penalties are not a collateral advantage outside of the proceeding because there will be an award only if plaintiff has correctly employed the citizen suit provision in the Clean Water Act and prevails on the merits of its claim.  Searles does not allege that CWA brought the instant action in order to coerce Searles into doing something that cannot be achieved pursuant to the Clean Water Act.  Any award of attorneys' fees received by CWA will be incidental to its success on the merits. <u>See</u> Restat. 2d of Torts, § 682(b)(there is no action for abuse of process when the process is used for the purpose for which it is intended but there is an incidental purpose of benefit to the party bringing suit).

Searles' counterclaim also suggests that

> CWA has willfully misused the declaratory judgment remedy in an attempt to accomplish purposes not warranted by the process.

Searles expands on that claim in its opposition memorandum, asserting that CWA's suit is an abuse of process because its "demands exceed any potential relief it could get" by bringing suit and it "attempts to achieve through use of the court that which the court is itself powerless to order".  Searles cites no Massachusetts case law in support of that contention.

Even so, the Court has authority to grant the relief that CWA seeks. The Clean Water Act gives district courts jurisdiction to enforce effluent standards and to apply any appropriate civil penalties. See 33 U.S.C. § 1365(a). CWA properly brought this action in the district court which has the power to grant civil penalties and a declaratory judgment and accordingly, bringing suit was not an abuse of process.

In its opposition memorandum, Searles also claims that CWA's alleged misuse of discovery is considered an abuse of process. The Court will not address that issue because Searles did not allege such facts in its counterclaim, instead raising them, for the first time, in its opposition memorandum. Nollet, 83 F. Supp. 2d at 208 (the Court may look only to the facts alleged in the pleadings).

### III. Defendant's Request for Leave to Amend

#### A. Legal Standard

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). A court "enjoys significant latitude in deciding whether to grant leave to amend" and the court's decision is proper if any adequate reason for allowance is discernable from the record. U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). Grounds for denial generally involve undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies and futility of the

amendment. United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007).

**B. Analysis**

In defendant's opposition memorandum, it requests leave to amend its counterclaim, pursuant to Fed. R. Civ. P. 15(a), in the event that the Court finds the counterclaim insufficient to survive the motion to dismiss. Further, defendant states it intends to add more specific allegations demonstrating plaintiff's ulterior motive if afforded an opportunity to amend. This Court sees no adequate reason for denial and will dismiss the counterclaim without prejudice and allow defendant leave to amend once. Should defendant's first amended counterclaim be insufficient, however, it will be dismissed with prejudice. See Montini v. Lawler, Nos. 12-11296-DJC, 12-11399-DJC, 2014 WL 1271696, at *12 n.7 (denying leave to amend after plaintiff had been afforded leave to file one amended complaint).

**ORDER**

In accordance with the foregoing, plaintiff's motion to dismiss (Docket No. 28) is **ALLOWED** and the counterclaim is dismissed in its entirety without prejudice.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 17, 2018